OPINION
{¶ 1} Plaintiff-appellant, Kevin VanWinkle, appeals the decision of the Butler County Court of Common Pleas granting summary judgment to defendants-appellees, Indiana Insurance Co. and Nationwide Agribusiness Insurance Co. We affirm the trial court's decision.
 {¶ 2} In January 2002, Sarah Oberhauser, a teacher at Talawanda High School in Oxford, Ohio, was involved in a fatal car accident while traveling east on Ohio Route 73. Oberhauser was driving her own personal car to a continuing education workshop at the Middletown, Ohio campus of Miami University. A vehicle traveling northbound on Route 177 driven by David Potteiger ran a red light and crashed into Oberhauser's car. Oberhauser died from her injuries. Potteiger pled guilty to vehicular manslaughter and failure to obey a traffic signal.
 {¶ 3} In February 2003, appellant, as personal representative and administrator of Oberhauser's estate, brought an action against Indiana Insurance Company and Nationwide Agribusiness Insurance Company.[1] Appellant claimed that he was entitled to uninsured/underinsured motorist ("UM/UIM") coverage under insurance policies issued by Indiana Insurance and Nationwide to Talawanda City School District. Specifically, appellant sought recovery of UIM coverage under the commercial automobile policy issued by Indiana Insurance in the amount of the $1,000,000 liability limits provided by the policy. Appellant additionally sought recovery to the liability limits provided under the education liability policy and umbrella policy issued by Nationwide to Talawanda School District in the amounts of $1,000,000 and $2,000,000, respectively.
 {¶ 4} Appellant and appellees filed motions for partial summary judgment and summary judgment. In April 2004, the trial court granted appellees' summary judgment motions and denied appellant's motions for partial summary judgment. The trial court found that Oberhauser was not an insured with respect to the Indiana Insurance commercial automobile policy. In granting summary judgment for Nationwide, the trial court found that neither the education liability policy nor the umbrella policy issued to Talawanda School District was an automobile liability policy requiring UM/UIM coverage. Appellant appeals the trial court's decisions, raising two assignments of error.
 {¶ 5} Assignment of Error No. 1:
 {¶ 6} "The trial court erred to the prejudice of plaintiff-Appellant in granting summary judgment to indiana insurance company on the basis that ms. oberhauser was not an insured under the uninsured/underinsured motorist coverage policy issued by Indiana Insurance Company."
 {¶ 7} In this assignment of error, appellant argues that he is entitled to UM/UIM coverage under Indiana Insurance's commercial automobile policy because UM/UIM coverage arises by operation of law to the extent of automobile liability limits per former R.C. 3937.18. Appellant further argues that Indiana did not comply with the explicit offer/rejection requirements ofLinko v. Indemnity Ins. Co. of N. Am., 90 Ohio St.3d 445,2000-Ohio-92, had Indiana desired to exclude UM/UIM coverage.
 {¶ 8} Civ.R. 56(C) provides in part that summary judgment shall be rendered where 1) there is no genuine issue as to any material fact; 2) the moving party is entitled to judgment as a matter of law; 3) reasonable minds can come to only one conclusion, and that conclusion is adverse to the party against whom the motion is made, who is entitled to have the evidence construed most strongly in his favor. Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 66. An appellate court's standard of review on appeal from a summary judgment is de novo. Burgess v. Tackas (1998), 125 Ohio App.3d 294, 296. An appellate court reviews a trial court's disposition of a summary judgment independently and without deference to the trial court's judgment. Id. In reviewing a summary judgment disposition, an appellate court applies the same standard as that applied by the trial court. Midwest Ford, Inc. v. C.T. Taylor Co. (1997),118 Ohio App.3d 798, 800.
 {¶ 9} The preliminary issue under any insurance policy claim is whether the claimant is entitled to protection as an insured. In Indiana's commercial automobile policy with Talawanda School District, the UM/UIM coverage endorsement provides as follows:
 {¶ 10} "B. Who Is An Insured
 {¶ 11} "If the Named Insured is designated in the Declarations as:
 {¶ 12} "* * *
 {¶ 13} "2. A partnership, limited liability company, corporation or any other form of organization, then the following are `insureds':
 {¶ 14} "a. Anyone `occupying' a covered `auto' or a temporary substitute for a covered `auto'. * * *.
 {¶ 15} "b. Anyone for damages he or she is entitled to recover because of `bodily injury' sustained by another `insured'."
 {¶ 16} Therefore, under Talawanda School District's policy with Indiana, "anyone occupying a covered auto" is an insured entitled to UM/UIM coverage.
 {¶ 17} Turning to what constitutes a covered auto, the policy provides the following:
 {¶ 18} "ITEM TWO of the Declarations shows the `autos' that are covered `autos' for each of your coverages. The following numerical symbols describe the `autos' that may be covered `autos'. The symbols entered next to a coverage on the Declarations designate the only `autos' that are covered `autos'."
 {¶ 19} The policy explains that the words "you" and "your" refer to the named insured shown in the declarations, which in this matter is Talawanda School District.
 {¶ 20} The policy then designates the following as the covered autos for purposes of uninsured motorists coverage:
 {¶ 21} "SPECIFICALLY DESCRIBED `AUTOS'. Only those `autos' described in ITEM THREE of the Declarations for which a premium charge is shown (and for Liability Coverage any `trailers' you don't own while attached to any power unit described in ITEM THREE)."
 {¶ 22} Item Three of the commercial automobile policy specifically lists only four vehicles as "covered autos you own": a 1982 low boy trailer, identification number 1241; a 1986 GMC truck with snow plow, identification number 0764; a 1986 GMC truck with snow plow, identification number 9738; and a 2000 Chevrolet pickup, identification number 1GBHK34F1YF469947.
 {¶ 23} Oberhauser was driving her own personal vehicle, not an automobile owned by Talawanda School District nor an automobile used to replace one of the covered autos. Oberhauser does not qualify as an insured. Thus appellant is not entitled to UM/UIM coverage under the automobile insurance policy issued by Indiana Insurance.
 {¶ 24} Appellant argues, however, that UM/UIM coverage arises by operation of law because Oberhauser was covered as an insured for purposes of automobile liability coverage. Former R.C.3937.18[2] provided, in pertinent part:
 {¶ 25} "(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered * * * unless both of the following coverages are offered to persons insured under the policy due to bodily injury or death suffered by such insureds:
 {¶ 26} "* * *
 {¶ 27} "(2) Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection forinsureds thereunder for bodily injury, sickness, or disease, including death, suffered by any person insured under thepolicy * * *." (Emphasis added.)
 {¶ 28} Appellant argues that the statute requires that UM/UIM coverage be provided to any party covered by the policy's automobile liability provisions. We disagree. The statute requires that underinsured motorist coverage shall be provided in an amount equivalent to the automobile liability coverage. Examining the commercial automobile policy, the policy provides a $1,000,000 amount of coverage for UM/UIM identical to the $1,000,000 amount of liability coverage in compliance with R.C.3937.18. However, the statute does not prohibit an insurance policy from determining who may be an insured for purposes of receiving the UM/UIM coverage. In this case, the language of the policy is clear and unambiguous. Because appellant is not an insured, he is not entitled to coverage under the commercial automobile policy issued by Indiana Insurance to Talawanda School District.
 {¶ 29} Because appellant's claim as an insured under the insurance contract fails, appellant's additional arguments regarding whether Indiana validly reduced UM/UIM coverage in contravention to Ohio law and complied with the explicit offer and rejection requirements of Linko must also fail as not applicable to a party not entitled as an insured. See Governalev. Sprecher, Warren App. No. CA2002-10-112, 2003-Ohio-2376. The trial court did not err in granting summary judgment to appellee Indiana Insurance. Accordingly, appellant's first assignment of error is overruled.
 {¶ 30} Assignment of Error No. 2:
 {¶ 31} "The trial court erred to the prejudice of plaintiff-Appellant in granting summary judgment to nationwide on the basis that the education liability and umbrella policies were not `motor vehicle liability insurance policies' and, therefore, not subject to the requirements of former R.C. § 3937.18's requirements to offer uninsured/underinsured motorist coverage."
 {¶ 32} In this assignment of error, appellant argues that the education liability policy ("ELP") and umbrella policy issued by Nationwide are automobile liability or motor vehicle liability policies, therefore making the Nationwide policies subject to the requirements of R.C. 3937.18 to provide UM/UIM coverage. Appellant cites Selander v. Erie Ins. Group, 85 Ohio St.3d 541,1999-Ohio-287, for this proposition. However, we find that appellant is not entitled to UM/UIM coverage because neither policy qualifies as an automobile liability or motor vehicle liability policy.
 {¶ 33} Former R.C. 3937.18(L) stated:
 {¶ 34} "As used in this section, `automobile liability or motor vehicle liability policy of insurance' means either of the following:
 {¶ 35} "(1) Any policy of insurance that serves as proof of financial responsibility, as proof of financial responsibility is defined by division (K) of section 4509.01 of the Revised Code, for owners or operators of the motor vehicles specifically identified in the policy of insurance;
 {¶ 36} "(2) Any umbrella liability policy of insurance written as excess over one or more policies described in division (L)(1) of this section."
 {¶ 37} The ELP provided the following coverage:
 {¶ 38} "We will pay on behalf of the `insured' all sums which the `insured' shall become legally obligated to pay for `damages' to which this insurance applies resulting from any claim made against the `insured' arising out of `acts or omissions' of the `insured'."
 {¶ 39} The policy, however, contains an explicit automobile exclusion. The policy states that the insurance does not apply to the following:
 {¶ 40} "To any liability arising from the ownership, operation, maintenance or use of any owned or non-owned `automobile', watercraft or aircraft. Operation of an `automobile' shall be considered to include * * * `occupying' any `automobile'."
 {¶ 41} R.C. 3937.18(L) limits the definition of an automobile liability or motor vehicle liability policy of insurance by providing that the proof of financial responsibility provided by the policy must be for owners or operators of the motor vehicles specifically identified in the policy. See Meister v. Zaragoza,
Butler App. Nos. CA2003-05-126, -128, -129, -130, 2004-Ohio-4311. The policy at issue in the present case does not specifically identify any vehicles. On the contrary, the ELP explicitly excludes automobiles from coverage.
 {¶ 42} Appellant, however, argues that the policy's definition of automobile includes two exceptions that would qualify as motor vehicles. "Automobile" is defined by the ELP as follows:
 {¶ 43} "(1) [A] land motor vehicle, motorcycle, trailer or semi-trailer designed for travel on public roads; (2) a midget `automobile', go cart, golf cart, motor-driven bicycle, tractor, snowmobile or any other motor-driven off-road vehicle; but does not include mobile equipment such as lawn mowers, street sweepers, backhoes, road graders and snow removal equipment."
 {¶ 44} Specifically, appellant claims that street sweepers and snow removal equipment are subject to motor vehicle registration and designed for use on public roads, thereby making the ELP a motor vehicle liability policy.
 {¶ 45} Appellant's underlying premise that street sweepers and snow removal equipment are motor vehicles is suspect. Appellant ignores the context in which the examples are provided by the policy. The policy uses street sweepers and snow removal equipment as illustrations of "mobile equipment." The definition distinguishes vehicles with a primary purpose of transporting persons from implements, albeit mobile, with a primary purpose of use in a particular activity or operation.
 {¶ 46} Despite the fact that a street sweeper is meant to be used on the road, the street sweeper's main purpose is, as its name implies, to sweep streets. The fact that this type of mobile equipment can travel on public roads does not, by itself, signify that it is a vehicle subject to motor vehicle registration. The same characteristic holds true for snow removal equipment. The primary purpose of snow removal equipment is not general highway transportation but rather removing snow.
 {¶ 47} Moreover, even if we were to assume that either is a motor vehicle, naming a class or category of motor vehicles will not satisfy the R.C. 3937.18(L) definition of an automobile liability or motor vehicle liability policy. See Meister v.Zaragoza, supra; Burkholder v. German Mut. Ins. Co., Lucas App. No. L-01-1413, 2002-Ohio-1184 (to be "specifically identified" in an insurance policy, motor vehicles must be precisely and individually identified in order to meet the definition of an automobile liability insurance policy which insurers cannot issue without an offer of UM/UIM coverage), affirmed 99 Ohio St.3d 163, 2003-Ohio-293; Reffitt v. StateAutomobile Mut. Ins. Co., Allen App. No. 01-02-38, 2002-Ohio-4885 (commercial policy insuring hired and nonowned vehicles did not meet the specifically identified requirement of R.C. 3937.18[L][1]); Jump v. Nationwide Mut. Ins. Co.,
Montgomery App. No. 18880, 2001-Ohio-1699 (general categories of hired and nonowned vehicles do not qualify as "specifically identified" vehicles using plain and ordinary meaning of those terms).
 {¶ 48} We conclude that Talawanda's EPL with Nationwide did not specifically identify any motor vehicles, therefore it did not satisfy the R.C. 3937.18(L) definition of an automobile or motor vehicle liability policy of insurance. Consequently, Nationwide was not required to offer uninsured or underinsured motorist coverage as part of the policy, and such coverage does not arise by operation of law pursuant to R.C. 3937.18(A).
 {¶ 49} With respect to the umbrella policy issued by Nationwide, the scope of its coverage is explicitly governed by the scope of coverage of the "underlying policy," in the instant matter, Talawanda's ELP. Thus, because appellant is not entitled to coverage under the ELP, he is not entitled to coverage under the umbrella policy.
 {¶ 50} We find that neither policy qualifies as a motor vehicle liability policy that would entitle appellant to UM/UIM coverage under R.C. 3937.18. The trial court did not err when it granted Nationwide's motion for summary judgment. Accordingly, we overrule appellant's second assignment of error.
 {¶ 51} Judgment affirmed.
Young, P.J., and Valen, J., concur.
[1] Appellant also sued defendant Potteiger who was underinsured for the damages he caused. Potteiger settled his claim to the extent of his insurance liability limits.
[2] Relevant to determining the scope of coverage of an UM/UIM claim, we examine the statutory law in effect at the date of issue of each new policy of automobile liability insurance as controlling. Wolfe v. Wolfe, 88 Ohio St.3d, 246, 250,2000-Ohio-322; Ross v. Farmers Ins. Group of Cos.,82 Ohio St.3d 281, 1998-Ohio-381. In the case at bar, the Indiana Insurance policy in effect at the time of the January 2002 accident was issued on March 15, 2001 and remained in effect until March 15, 2002. Thus, the version of R.C. 3937.18 as amended by S.B. No. 267 (eff. Sept. 21, 2000) is the applicable version of the statute.